[68 NE3d 1242, 46 NYS3d 511]

The People of the State of New York, Respondent, v Robert Patterson, Appellant.

Argued November 15, 2016; decided December 22, 2016

## POINTS OF COUNSEL

*Seymour W. James, Jr., The Legal Aid Society*, New York City (*Ellen Dille* of counsel), for appellant.

546

*Darcel D. Clark, District Attorney*, Bronx (*Ryan P. Mansell, Marianne Stracquadanio* and *Nancy Killian* of counsel), for respondent.

**OPINION OF THE COURT**

STEIN, J.

In this appeal, we are asked to determine whether the Appellate Division properly upheld the admission of subscriber information in prepaid cell phone records as nonhearsay evidence located within a business record. Because the subscriber information was not introduced for the truth of the matters asserted therein, the courts below properly determined that it was independently admissible.

## I.

Defendant was convicted, after a jury trial, of second-degree burglary and robbery. The charges arose out of an incident in which defendant and another man entered the victim's bedroom wearing bandanas and carrying pistols after defendant's accomplice, Daichele Goree—who went to the victim's apartment by invitation—received a series of cell phone calls while she was there. The victim testified that he could see defendant's forehead, eyebrows, the bridge of his nose, his nostrils and the top of his ears. The men directed the victim to get on the ground, taped his wrists, mouth and ankles, and took the victim's cash and various items of personal property. The victim freed himself and called 911, but he was unable to give the 911 operator a description of the men apart from stating that they were black, wore bandanas and carried guns.

When police arrived shortly thereafter, the victim gave Goree's phone number to a detective, and provided a very general description of the robbers as young black men, about six feet tall, with red bandanas up to their noses. The detective subpoenaed Goree's phone records and discovered that one of three numbers called during the time frame of the incident was connected to a Sprint/Nextel account registered to a "Darnell Patterson," with an address and date of birth that were associated with defendant in police databases. The victim subsequently identified defendant in a lineup as one of the assailants and defendant was arrested; the date of birth that he provided to police upon his arrest was the same as that set forth in the Sprint subscriber information.

Prior to trial, defendant moved to preclude the People from offering into evidence the subscriber information portion of the Sprint records, arguing that it constituted hearsay within hearsay. Defendant conceded that the log of the phone calls was admissible under the business records exception, but argued that the subscriber information was not admissible pursuant to that exception because the subscriber who initially provided the information had no duty to report it accurately. Because the records stated on their face that they could be inaccurate or incomplete, defendant argued that they should be precluded. The People conceded that the subscriber information did not prove that the person who registered the phone was Darnell Patterson or that defendant was in the room when the robbery took place, but maintained that the evidence was admissible for two limited purposes: to complete the narrative; and to show that the phone number that Goree called around the time of the robbery had been registered by someone using the name Darnell Patterson, with defendant's address and birth date.

Supreme Court concluded that the subscriber information was not admissible merely for the purpose of "complet[ing] the narrative," given that the People sought to argue that the information corroborated the victim's eyewitness identification of defendant. However, the court ruled that it would admit the subscriber information as a "business record[ ]" through a Sprint representative's testimony that it was Sprint's regular course of business to make and keep these records, but that Sprint did not verify the information and, therefore, "disclaim[ed] any reliability." The court recognized that, because the subscriber had no business duty to provide accurate

information, the business records exception to the hearsay rule did not apply, but concluded that the subscriber history was admissible "for the purpose of showing that this is the information that was given, the fact that [the] information was given at a time that well preceded the crime itself." That is, the court determined that the subscriber information was admissible, not for the truth of the matters asserted therein, but for the nonhearsay purpose of showing that this particular cell phone was activated by someone who supplied identifying information linked to defendant, thereby providing corroborating evidence for the victim's identification of defendant in a lineup.

At trial, defendant repeated his objections to the Sprint cell phone records and also argued that the subscriber information on Goree's T-Mobile cell phone records should not be received in evidence. The court overruled the objections. As relevant here, representatives of both Sprint and T-Mobile testified that the records containing subscriber information for prepaid phones are made at the time the subscriber activates the phone, the call logs are recorded or cataloged at or around the time the calls are made, and the person recording all of the information contained in the records has a business duty to record it fairly, accurately and completely, but the subscriber information is not verified. The Sprint representative also testified that, shortly before and after the time of the robbery, the Sprint number in question received eight calls from Goree's number and made three calls to that number.

In addition, there was evidence that, on the night of the robbery, the Sprint number dialed or received calls from five other numbers. A New York City Department of Corrections investigator thereafter testified that, during defendant's incarceration while awaiting trial on the instant charges, he called those same five numbers 1,371 times, 48 times, 31 times, 58 times and 103 times, respectively. The investigator also testified that the date of birth associated with defendant's Department of Corrections identification number was the same as that included in the Sprint subscriber information.

The jury acquitted defendant of first-degree robbery and burglary, and grand larceny, but convicted him of second-degree robbery and burglary. On defendant's appeal, the Appellate Division affirmed, concluding that the subscriber information— which it called "pedigree information"—"did not constitute assertions of fact" but was "properly admitted as circumstantial evidence of defendant's identity as the purchaser of the phone,"

i.e., "that the declarant was, in all likelihood, defendant" (128 AD3d 424, 425 [1st Dept 2015]). The Court explained that, "[a]lthough the purchaser of the phone was not under a business duty to provide the pedigree information, that requirement of the business records exception to the hearsay rule did not apply, because the initial declaration was independently admissible" (*id.* at 425).

A Judge of this Court granted defendant leave to appeal (25 NY3d 1205 [2015]).

## II.

■ As a threshold matter, we reject defendant's argument that the Appellate Division exceeded its authority under CPL 470.15 (1), which "bars that court from affirming a judgment, sentence or order on a ground not decided *adversely* to the [defendant] by the trial court" (*People v Concepcion*, 17 NY3d 192, 195 [2011]; *see People v LaFontaine*, 92 NY2d 470, 474 [1998]). Recently, in *People v Nicholson* (26 NY3d 813 [2016]), this Court cautioned against "a flawed and overly narrow construction of the statutory limits of 470.15 (1) as applied to the Appellate Division's review of the trial court's evidentiary ruling[s]" (*id.* at 825), particularly where the "Appellate Division [does not] render[ ] a decision on grounds explicitly different from those of the trial court, or on grounds that were clearly resolved in a defendant's favor—the type of appellate overreaching prohibited by CPL 470.15 (1)—[but affirms an] evidentiary ruling on the ground relied on by the trial court" (*id.* at 825-826 [citation omitted]). We conclude that, contrary to defendant's contention, the Appellate Division did not rule that the subscriber information was admissible based upon a ground that was different from that on which the trial court relied. Rather, both courts ultimately concluded that the subscriber information was not hearsay because it was not " 'offered for the truth of the fact[s] asserted in the statement' " (*People v Goldstein*, 6 NY3d 119, 127 [2005], *cert denied* 547 US 1159 [2006], quoting *People v Romero*, 78 NY2d 355, 361 [1991]) and, thus, the evidence was independently admissible. Under these circumstances, the Appellate Division did not exceed its authority under section 470.15 (1) and there is no *LaFontaine/Concepcion* bar to our review.

## III.

■ Turning to the merits, we agree with the courts below that the subscriber information was properly admitted for a

nonhearsay purpose other than simply completing the narrative. Therefore, defendant's argument that the information would not be admissible under the business records exception—while technically correct because the subscriber was not under a duty to report his or her "pedigree" information correctly when activating the prepaid cell phone accounts—is misplaced.

CPLR 4518 (a)* sets forth the business records exception to the hearsay rule:

> "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter."

More than 85 years ago, in *Johnson v Lutz* (253 NY 124 [1930]), this Court imposed an additional requirement for admissibility that is not set forth in the statute—specifically, that "[u]nless some other hearsay exception is available . . . , admission may only be granted where it is demonstrated that the informant has personal knowledge of the act, event or condition and he [or she] is under a business duty to report it to the entrant" (*Matter of Leon RR*, 48 NY2d 117, 123 [1979]; *see Cover v Cohen*, 61 NY2d 261, 274 [1984]; *Johnson v Lutz*, 253 NY 124, 127-128 [1930]; *see also* Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4518:1; Jerome Prince, Richardson on Evidence § 8-307 [Farrell 11th ed 1995]).

Pursuant to this rule, "[i]f the informant was not under a business duty to impart the information, but the entrant was under a business duty to obtain and record the statement, the entry is admissible to establish merely that the statement was made . . . [but] another hearsay exception is necessary in order to receive the statement *for its truth*" (*Hayes v State of New York*, 50 AD2d 693, 693-694 [1975] [emphasis added], *affd on op below* 40 NY2d 1044 [1976]). That is, although the contents

---

* CPLR 4518 (a) is applicable to criminal proceedings pursuant to CPL 60.10 (*see People v Ortega*, 15 NY3d 610, 617 [2010]; *People v Kennedy*, 68 NY2d 569, 575 [1986]).

of the statements in a record are not admissible for the truth of the matters asserted therein under the business records exception to the hearsay rule when the informant was not acting pursuant to a business duty to report, "the contents of the record [nevertheless] may be used for a nonhearsay purpose" (Jerome Prince, Richardson on Evidence § 8-307 at 606 [Farrell 11th ed 1995]; *see Splawn v Lextaj Corp.*, 197 AD2d 479, 480 [1st Dept 1993], *lv denied* 83 NY2d 753 [1994] [hotel logbook entries reporting burglaries not admissible to prove the crimes occurred but permitted to show hotel had notice of activity]; *People v Blanchard*, 177 AD2d 854, 855 [3d Dept 1991], *lv denied* 79 NY2d 918 [1992] [police blotter entry showing phone call made by someone purporting to be defendant's father properly received not for its truth, but to impeach father, who testified that he did not make the call]; *Donohue v Losito*, 141 AD2d 691, 691-692 [2d Dept 1988], *lv denied* 72 NY2d 810 [1988] [portion of police report indicating trial witness stated that defendant had punched plaintiff in the face not admissible for its truth under CPLR 4518, but admissible to impeach witness]; *see also* Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4518:1).

Consistent with these principles, the United States Court of Appeals for the Second Circuit concluded in *United States v Lieberman* (637 F2d 95, 100-101 [2d Cir 1980]) that a hotel guest registration card was not admissible for its truth under the business records exception to the rule against hearsay contained in Federal Rules of Evidence rule 803 (6) because the hotel employee registering guests did not verify the guests' identity. Nevertheless, that court concluded that the registration card was "admissible as non-hearsay, simply to show that someone calling himself" the same name as a man who happened to be arrested by DEA agents while loading 46 cartons of marihuana into a van belonging to the defendant's moving company "registered in the hotel" (*id.* at 101). The registration card provided "a foundation for further evidence that from [the individual's] room a call was made to [defendant's] unpublished telephone number" (*id.*). The defendant in *Lieberman* was ultimately convicted of crimes involving conspiracy to distribute marihuana. "To provide evidence that the jury should infer that" the person calling defendant was the same individual who was arrested, "the government presented the testimony of the arresting . . . agent [that] . . . the address he had read on the driver's license carried by [the individual] . . . was the

same as that written on the hotel registration card" (*id.*). The Second Circuit concluded that "it was proper to receive the hotel registration card for the limited non-hearsay purpose, with other evidence admitted from which the jury could infer that the hotel card spoke the truth" (*id.*; *see United States v Bell*, 833 F2d 272, 276 [11th Cir 1987], *cert denied* 486 US 1013 [1988] [hotel card admissible for nonhearsay purpose of showing someone using defendant's name and address registered at inn]; *Commonwealth v Siny Van Tran*, 460 Mass 535, 550-551, 953 NE2d 139, 155-156 [2011] [airline passenger manifest and ticket inquiry admissible for nonhearsay "purpose of showing that the statements were made by someone, even, perhaps, a person being untruthful, who held (himself or herself) out to be" the defendant]).

## IV.

Similarly here, the subscriber information was not hearsay, although it was contained within business records, because it was not admitted to prove the truth of the matters asserted therein. That is, the subscriber information was not offered to prove that "Darnell Patterson" and Goree were the subscribers of the cell phone accounts used at the time of the robbery, or that "Darnell" had a particular date of birth that matched that of defendant and lived at a particular address that was associated with defendant. Indeed, it was simply irrelevant whether that information was true or false and the cell phone company representatives testified that the evidence was not verifiable. Rather, as in *Lieberman*, the information was admitted for the limited purpose of showing that the individuals who activated the cell phone numbers identified themselves as Darnell Patterson and Goree, and that "Darnell Patterson" gave certain pedigree information that was otherwise associated with defendant.

In other words, the purpose of the subscriber information was not to prove that "Darnell Patterson," or even defendant, had activated the prepaid Sprint account, but to show that the account had some connection to defendant—regardless of how tenuous—because such a connection would be helpful to the jury in assessing the reliability of the victim's identification of defendant as the perpetrator. The evidence was ultimately relevant to the People's argument to the jury that it was not coincidental that *someone*—regardless of who—provided pedigree information associated with defendant in activating

the cell phone. Under the circumstances of this case, the subscriber information was not admitted for its truth, but for the jury to consider as a piece of the puzzle—along with evidence that the prepaid Sprint account called the same numbers that defendant did in prison, that the date of birth given by defendant when arrested matched that in the subscriber information, that the address given in the subscriber information was associated with defendant in police databases, and that defendant had the name Darnell tattooed on his hand—that gave rise to an inference that defendant was the user of the phone, although perhaps not the subscriber, a subtle but critical distinction for purposes of the evidentiary issue before us.

We, therefore, conclude that the subscriber information was properly admitted for a limited, nonhearsay purpose. Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed.

RIVERA, J. (concurring). I agree with the majority that the Appellate Division should be affirmed, but on different grounds. Based on our existing case law, the subscriber information was admissible for the nonhearsay purpose of completing the narrative leading to defendant's arrest. To the extent the court erroneously permitted use of the evidence beyond this limited purpose, the error was harmless. Therefore, I concur only in the result.

This Court has upheld the admission of evidence otherwise excludable for "the relevant, nonhearsay purpose of explaining the investigative process and completing the narrative of events leading to the defendant's arrest" (*People v Ludwig*, 24 NY3d 221, 231 [2014]; *People v Till*, 87 NY2d 835, 837 [1995 mem] [permitting evidence of uncharged crimes to provide background explanation of "interwoven events," as an exception to the *Molinuex* ban on such evidence]; *see also People v Tosca*, 98 NY2d 660, 661 [2002 mem] [nonhearsay background information about how and why police pursued and confronted defendant properly admitted with limiting instructions]). I continue to believe that this "completion of the narrative" rationale can be applied too expansively, such that it allows the introduction of inadmissible and overly-prejudicial evidence (*see generally People v Morris*, 21 NY3d 588, 600-601 [2013, Rivera, J., dissenting] [the limited "completing the narrative" exception should not apply to evidence of uncharged crimes

absent ambiguity of material facts "or where the ambiguity can be addressed 'by far less prejudicial means' than the admission of the uncharged crimes evidence"]; *Ludwig*, 24 NY3d at 235 [Lippman, Ch. J., dissenting] ["The majority eviscerates the hearsay rule . . . by countenancing the admission of prior consistent statements that provide a 'narrative' or 'investigative purpose' even where the investigative purpose is not in issue"]). Nevertheless, the exception applies to defendant's case.

Here, the People argued, inter alia, that the primary purpose of admitting the subscriber information was to complete the narrative, and the trial testimony supports this argument. The People established at trial that the police obtained the number for the phone at issue by identifying which numbers Ms. Goree called during the robbery. From there, detectives obtained the subscriber information for that phone, and this information pointed them to Darnell Patterson. The detectives linked the name from the subscriber information to defendant, which then permitted the detectives to identify defendant as a suspect for the crime. As such, the subscriber information was admissible to explain the events leading to his arrest.

The majority opines, however, that this statement is a "piece of the puzzle" that the jury may use "in assessing the reliability of the victim's [eyewitness] identification" and a basis for the inference the "defendant was the user of the phone" (majority op at 552-553). The majority concludes that this is an appropriate nonhearsay use for the statement, since it was introduced to show that the phone had some connection to the defendant and not that the phone belonged to Darnell Patterson (*id.* at 552). The majority essentially extends the narrative exception for the hearsay at issue here beyond an explanation of the police investigation and defendant's capture, for the purpose of establishing that defendant was the user of the phone. Of course, if defendant was the user and not the subscriber, then the subscription evidence was irrelevant to establish—circumstantially and inferentially—defendant's criminal conduct. On the facts of this case, the subscriber would be irrelevant if that person were not the defendant. Indeed, the prosecutor went to great lengths to connect defendant to the person listed as the subscriber. The People's evidence established that the subscriber name was defendant's known alias, the subscriber's date of birth was defendant's, and the subscriber's address was the defendant's. Moreover, the court admitted the defendant's tattoo only because it matched the subscriber's name.

In comparison, if the subscriber information is introduced to complete the narrative, the jury need not accept its content as true to properly consider the evidence. The subscriber information demonstrates how the police identified defendant as a suspect for the robbery and is a link in the chain for the jury to consider in assessing the entirety of the police investigation. Admission or use for any other purpose was error. However, given the facts of this case, including the eyewitness testimony of the victim and the matching phone records between the cell phone and defendant's Rikers Island calls, any such error was harmless (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

Chief Judge DiFiore and Judges Pigott, Abdus-Salaam, Fahey and Garcia concur; Judge Rivera concurs in result in a separate concurring opinion.

Order, insofar as appealed from, affirmed.