Department of Hous. Preserv. & Dev. of City of N.Y. v Joseph (2025 NY Slip Op 50501(U))

[*1]

Department of Hous. Preserv. & Dev. of City of N.Y. v Joseph

2025 NY Slip Op 50501(U)

Decided on April 4, 2025

Appellate Term, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 4, 2025
SUPREME COURT, APPELLATE TERM, SECOND DEPARTMENT, 2d, 11th and 13th JUDICIAL DISTRICTS
PRESENT: : WAVNY TOUSSAINT, P.J., CHEREÉ A. BUGGS, LISA S. OTTLEY, JJ

2023-1073 K C

Department of Housing Preservation and Development of the City of New York, Respondent,
against
Richard Joseph, Jims Realty, LLC, Also Known as Jim Realty, LLC and Joseph Popack, Appellants. 

Berger Fink, LLP (Jason M. Fink, David M. Berger and Eric Rosenberg of counsel), for appellants.
New York City Law Department (D. Alan Rosinus, Jr. of counsel), for respondent.

Appeal from a decision and order of the Civil Court of the City of New York, Kings County (Jack Stoller, J.), dated May 19, 2022, deemed from a final judgment and a judgment of that court (see CPLR 5512 [a]), each entered May 23, 2022. The final judgment, entered pursuant to so much of the decision and order as, after a joint nonjury trial and hearing, imposed civil penalties in the amount of $706,160, awarded the New York City Department of Housing Preservation and Development (HPD) the principal sum of $706,160 in civil penalties. The judgment, insofar as appealed from, entered pursuant to so much of the decision and order as, after the joint nonjury trial and hearing, granted the branch of HPD's motion seeking to hold landlords in civil contempt and fining them the sum of $250, imposed a fine of $250 for civil contempt against landlords.

ORDERED that the final judgment, and the judgment insofar as appealed from, are affirmed, without costs.
The New York City Department of Housing Preservation and Development (HPD) commenced this HP proceeding to, insofar as is relevant to this appeal, obtain an order to correct 159 open violations and for civil penalties against landlords for eight open "C" (immediately hazardous) violations and eight open "B" (hazardous) violations. Following pretrial motion practice, in an order dated October 19, 2021, the Civil Court ordered that all "C" violations be [*2]corrected within ten days of the order, all "B" violations be corrected within 30 days, and all "A" (non-hazardous) violations be corrected within 60 days. In an order to show cause (OSC) dated November 29, 2021, HPD moved for civil and criminal contempt and additional civil penalties, alleging that numerous violations remained uncorrected. In an order dated January 10, 2022, the Civil Court directed that a hearing on the relief sought in HPD's OSC be held jointly with the already calendared trial.
The joint hearing and nonjury trial was held on January 13 and 31, and March 15, 2022. HPD presented only documentary evidence, including an open violation summary report, notices of violation addressed to landlords, and inspection reports. Landlords produced two witnesses who testified that they oversaw repairs but did not personally perform them. The Civil Court admitted landlords' work orders and service tickets, some signed by workers, tenants, or both, purportedly acknowledging completed repairs, into evidence as business records. However, the Civil Court sustained HPD's objection to the admission of the tenants' signatures as evidence of completed repairs because the tenants had no business duty to sign landlords' business records. After the joint nonjury hearing and trial, the Civil Court found that HPD properly made their prima facie case with documentary evidence pursuant to Multiple Dwelling Law § 328 (3). The Civil Court (Jack Stoller, J.) found that landlords' failure to certify that violations were corrected created a rebuttable presumption pursuant to Administrative Code § 27-2115 (f) (7) that the repairs were not completed. The Civil Court further found that landlords failed to rebut that presumption. The court awarded HPD civil penalties in the amount of $706,160, finding that five class "C" immediately hazardous violations had remained open, most for more than 1,000 days, and five class "B" hazardous violations had remained open, all for more than 700 days.[FN1]
 The court also imposed a fine of $250 for civil contempt only. A final judgment for the civil [*3]penalties and a separate judgment for civil contempt were each entered on May 23, 2022 pursuant to the decision and order.
Landlords contend on appeal that the Civil Court improperly excluded the tenants' signatures on the work orders and service tickets as evidence that the repairs were completed. On the work orders, such signatures purport to adopt a pre-printed statement on the work order that the work was completed to the tenant's satisfaction. On the service tickets, the space for the tenant's signature appears near fields to be filled in, presumably by someone other than the tenant, with the times the work started and finished, so the signature presumably adopts whatever times are filled in. To the extent landlords were trying to use those statements—in effect, that the work was completed—for their truth, they are hearsay, but landlords argue that they are admissible under the business records exception to the rule against hearsay (see CPLR 4518 [a]). However, landlords failed to authenticate tenants' signatures on the work orders and service tickets, and for that reason the signatures have no effect. In any event, a statement from a third party on an otherwise admissible business record may only be admissible if the third party " 'was under a business duty' " to make that statement (Memenza v Cole, 131 AD3d 1020, 1022 [2015], quoting Stevens v Kirby, 86 AD2d 391, 395 [1982]; see People v Patterson, 28 NY3d 544 [2016]). Since tenants were not under a business duty to sign landlords' work orders and service tickets, any statements attributed to an authenticated tenant's signature on the work orders and service tickets at issue are not admissible for their truth based upon CPLR 4518 (a).
Next, landlords contend that the presumptions afforded to HPD and against landlords pursuant to Multiple Dwelling Law § 328 (3) and Administrative Code § 27-2115 (f) (7) violate landlords' due process rights by unfairly shifting the burden of proof to landlords. Landlords' constitutional challenge to Multiple Dwelling Law § 328 (3) is not properly before this court as the Office of the Attorney General has not been properly noticed (see CPLR 1012 [b] [1]; Executive Law § 71 [3]; Matter of Fuchs v Itzkowitz, 120 AD3d 682 [2014]; Matter of A & J Produce Corp. v Commissioner of Fin. of City of NY, 199 AD2d 99 [2024]). Turning to landlords' challenge to the Administrative Code,[FN2] legislative enactments and municipal ordinances are afforded an "exceedingly strong presumption of constitutionality"(Lighthouse [*4]Shores v Town of Islip, 41 NY2d 7, 11 [1976]; see Department of Hous. Preserv. & Dev. of City of NY v De Bona, 101 AD2d 875 [1984]).
"Under both the federal and state constitutions, the State may not deprive a person of property without due process of law (U.S. Const. 14th Amend.; NY Const., art. I, § 6). It is well settled that the requirements of due process are satisfied where 'notice [is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections' " (Harner v County of Tioga, 5 NY3d 136, 140 [2005], quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950]). 

Imposing a rebuttable presumption of uncorrected violations on landlords following sufficient notice does not violate due process (see Matter of Department of Hous. Preserv. & Dev. of City of NY v Deka Realty Corp., 208 AD2d 37 [1995]; Department of Hous. Preserv. & Dev. of City of NY v De Bona, 101 AD2d 875). Furthermore, a rebuttable presumption against a defendant or respondent satisfies due process where the facts presumed have a rational or natural connection with the facts proven (see Matter of Casse v New York State Racing & Wagering Bd., 70 NY2d 589, 595 [1987]; People v Hildebrandt, 308 NY 397, 400 [1955]). Here, landlords had notice and the opportunity to present their evidence at trial. Additionally, the facts presumed here, that landlords failed to correct the outstanding violations, have a rational and natural connection with the facts HPD proved — that violations are outstanding and that landlords are the responsible parties to correct them. Therefore, landlords' due process rights were not violated.
Landlords next contend that the trial court erred in its fact-finding when imposing civil penalties of $135,900 for a cockroach infestation, one of the class "C" violations. The decision of a fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence (see Claridge Gardens v Menotti, 160 AD2d 544 [1990]). Furthermore, the determination of a trier of fact as to issues of credibility is given substantial deference, as a trial court's opportunity to observe and evaluate the testimony and demeanor of witnesses affords it a better perspective from which to assess their credibility (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; Hamilton v Blackwood, 85 AD3d 1116 [2011]; Zeltser v Sacerdote, 52 AD3d 824, 826 [2008]). Here, landlords' evidence consisted of three work orders and testimony from one witness who oversaw repairs but did not personally perform them. Landlords failed to produce invoices or proof of payment (see Department of Hous. Preserv. & Dev. of City of NY v Knoll, 120 Misc 2d 813 [App Term, 2d Dept, 2d & 11th Jud Dists 1983]; HPD v Fersedy, NYLJ, April 2, 1987, at 16, col 3 [App Term, 2d Dept, 2d & 11th Jud Dists 1987]). The Civil Court properly weighed the evidence presented and its conclusion is based on a fair interpretation of that evidence. Therefore, its finding should not be disturbed.
Finally, landlords contend that the $706,160 in civil penalties violates the Excessive Fines Clauses of the United States and New York State Constitutions. Both Excessive Fines Clauses "limit[] the government's power to extract payments, whether in cash or in kind, as 'punishment for some offense' " (County of Nassau v Canavan, 1 NY3d 134, 139 [2003], quoting Austin v United States, 509 US 602, 609-610 [1993]). Here, the daily civil penalties imposed pursuant to former Administrative Code § 27-2115 (a) serve " 'a remedial, rather than punitive, purpose, as [they are] intended to coerce property owners to comply with housing maintenance standards' " [*5](Department of Hous. Preserv. & Dev. of City of NY v 1515 St. Johns Place, 81 Misc 3d 140[A], 2024 NY Slip Op 50066[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024], quoting Singletary v Residential Mgt. Inc., 77 Misc 3d 20, 22 [App Term, 1st Dept 2022]). Therefore, the Excessive Fines Clauses are, as a matter of law, inapplicable to the civil penalties imposed here.
Accordingly, the final judgment, and the judgment insofar as appealed from, are affirmed.
TOUSSAINT, P.J., BUGGS and OTTLEY, JJ.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 4, 2025

Footnotes

Footnote 1:Former Administrative Code § 27-2115 (a), applicable here, states that "[a] person who violates any law relating to housing standards shall be subject to a civil penalty of" $50 to $150 plus a daily penalty of $125 for each class "C" (immediately hazardous) violation in a multiple dwelling with more than five residential units and a civil penalty of $25 to $100 plus a daily penalty of $10 for each class "B" (hazardous) violation. The daily penalties are imposed "from the date set for correction in the notice of violation until the violation is corrected." The current version of Administrative Code § 27-2115 (a), effective December 8, 2023, increased civil penalties for class "C" violations in a multiple dwelling with more than five residential units to $150 to $1,200 plus a daily penalty of $150 to $1,200 and civil penalties for class "B" violations to $75 to $500 plus a daily penalty of $25 to $125.

Footnote 2: Landlords are mounting a constitutional challenge to a local law and as such CPLR 1012 (b) (2) requires, if the municipality that enacted the law is not a party, that the municipality be notified and permitted to intervene (see Matter of Monserrate v Espinal, 194 AD3d 887 [2021]). HPD is a department of the City of New York established under its charter (see NY City Charter § 1800) demonstrating that the municipality is a party in this action. Moreover, even if HPD was a distinct entity, the New York City Law Department has filed a Notice of Appearance with this court and is representing HPD on this appeal.