**KENNEDY BOULEVARD ASSOCIATES I, L.P.,**
Appellant,

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.
Decided May 9, 2000.

Penny C. Ellison, Philadelphia, for appellant.

Christine T. Bak, Philadelphia, for appellee.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

McGINLEY, Judge.

Kennedy Boulevard Associates I, L.P. (Kennedy) appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas court) that denied Kennedy's appeal and affirmed the decision of the Tax Review Board of Philadelphia's (TRB) denial of a refund.

Kennedy and TRB stipulated to the following:

1. Kennedy ... a Pennsylvania limited partnership, is the owner of a 29 story building located at 1801–45 JFK Boulevard, Philadelphia, Pennsylvania, known, at the time of acquisition, as "the Carlton House". The property consists of 537 apartment units, retail and office space and basement space leased for use as a parking garage. **Kennedy acquired the Carlton House on November 30, 1995.** (emphasis added).

2. The Carlton House has a long history of financial difficulties.... In March 1988 an involuntary bankruptcy was filed against the record owner, TM Carlton House Partners, Ltd., a Pennsylvania limited partnership, which subsequently consented to Chapter 11 proceeding under the Bankruptcy Code.

In May 1989, the Bankruptcy Court for the Eastern District of Pennsylvania, confirmed a plan of reorganization which provided, *inter alia*, that a new limited partnership entity, New Carlton House Partners, Ltd., would be formed to own the Carlton House. The primary debt on the property, owed to Consolidated Capital Equity Partners ("CCEP") was restructured under the plan. Funding for the mortgage debt was provided to CCEP by Consolidated Capital Institutional Properties ("CCIP"), a public partnership.

3. In February 1993 the ownership interests in New Carlton House Partners, Ltd. were restructured with CCEP becoming the new general partner under a plan which gave CCEP the right to acquire the fee simple interest in the Carlton House in April 1995 by foreclosing or otherwise extinguishing the ownership rights of the limited partners.

4. Kennedy is owned by CCID [sic] through a series of limited and general partnerships. In December 1994, an affiliate of Insignia Financial Group, Inc. ("Insignia"), acquired a portfolio of partnership interests including a partnership interest in CCIP which, through various limited and general partnership interests, controlled CCEP and New Carlton House Partners, Ltd. The acquisition of the partnership interest in CCIP by Insignia, in December 1994, was in anticipation of acquiring the fee simple in the Carlton House.

5. Beginning in December 1994, following the acquisition of the partnership interest in CCIP, Insignia performed an analysis of the operations of the Carlton House in order to determine its market value and whether further investment in the property was justified.... Insignia's internal due diligence indicated that the current market value of the Carlton House was between $12,000,000 and $14,000,000. The estimate of current value of the Carlton House by Insignia was made prior to April, 1995.

6. The Carlton House ... was assessed by the City and School District of Philadelphia for real estate purposes, as of January 1, 1995, for the tax year 1995, at $7,200,000 based . upon an implied market value of $22,500,000. At the time Insignia acquired a partnership interest in CCIP, December 1994, the statutory period for appealing the implied market value to the Board of Revision of Taxes for 1995 assessment purposes, had expired.

7. In April, 1995, Insignia, through CCIP, engaged Reaves C. Lukens Company to perform an appraisal of the Carlton House to determine the estimated market value of the property as of May, 1995. In a summary appraisal report dated June 22, 1995, Reaves C. Lukens Company determined that the market value of the property was $19,250,000 as of May 12, 1995....

8.... Insignia, in June 1995, determined that the implied value of $22,500,000, used by the City and School District of Philadelphia for real estate assessment purposes, was grossly overstated. In July 1995, Insignia ... appeal[ed] the existing implied market value of $22,500,000 to the Board of Revision of Taxes. At the time of the engagement of counsel, the implied market value of $22,500,000 could not be timely appealed to the Board of Revision of Taxes for the 1995 tax year.

9. On September 28, 1995, New Carlton House Partners, Ltd. timely appealed the existing implied market value of $22,500,000 to the Philadelphia Board of Revision of Taxes in respect of the 1996 tax year.... The implied market value of $22,500,000 was used by the Board of Revision of Taxes for assessment purposes in each of the years 1995 and 1996.

10. Insignia, through its ownership and control of CCIP, CCEP and New Carlton House Partners, Ltd., transferred the rights to acquire the fee simple interest in the Carlton House to Kennedy.

On November 30, 1995, while the market value appeal was pending, Kennedy acquired the Carlton House from New Carlton House Partners Ltd. by deed in lieu of foreclosure. (emphasis added).

11. At the time of the transfer, the Carlton House was assessed at $7,200,000 based upon an implied market value of $22,500,000. Even though the market value of the property for assessment purposes was being actively contested by a market value appeal, then pending with the Philadelphia Board of Revision of Taxes, the Philadelphia Recorder of Deeds would not accept the deed for filing unless Philadelphia transfer tax was computed by applying the applicable common level ratio (3.48) to the assessment to arrive at a market value for transfer tax purposes of $25,056,000. Transfer tax in the amount of $751,000,680 [sic] was paid on or about December 6, 1995. (emphasis added).

12. Reaves C. Lukens ... would testify that in his professional opinion, the fair market value of the Carlton House on November 30, 1995, did not exceed $18,000,000.

. . . .

16. On November 30, 1995, the fair market value of the Carlton House, 1801–45 JFK Boulevard, Philadelphia, PA did not exceed $18,000,000. (emphasis added).

17. Following a hearing on December 28, 1995, the Board of Revision of Taxes, on April 10, 1996, reduced the implied market value from $22,500,000 to $20,250,000. The assessed value was similarly reduced from $7,200,000 to $6,480,000. The re-determination of value by the Board of Revision of Taxes was certified as of January 1, 1996.

18. The decision of the Board of Revision of Taxes was timely appealed by Kennedy ... as successor in interest to New Carlton House Partners Ltd., to the Court of Common Pleas of Philadelphia County for a *de novo* determination of value.

19. Following the appeal to the Court of Common Pleas the Board of Revision of Taxes, the Law Department and Kennedy conducted a pretrial settlement conference ... to settle the value of the Carlton House, as of January 1, 1996, at $18,000,000.... The Law Department and Kennedy entered into a stipulation, filed with the Court of Common Pleas, stating the market value ... to be $18,000,000 and $5,760,000, respectively, as of January 1, 1996....

20. On September 4, 1996, the Philadelphia Court of Common Pleas issued its Order and Determination fixing the fair market value of ... "the Carlton House", as of January 1, 1996, at $18,000,000 and the taxable assessed value at $5,760,000. The Board of Revision of Taxes re-certified the taxable assessed value and implied market value, as of January 1, 1996, respectively at $5,760,000 and $18,000,000 .... (emphasis added).

21. On November 7, 1996, ... Kennedy filed a claim for refund of transfer tax overpaid to the City of Philadelphia in the amount of $211,680....

22. By letter dated March 13, 1997, the Department of Revenue, Refund Unit, denied the claim for refund of transfer tax asserting, *inter alia* that " ... the lower value was not in effect on the date of the transfer ·and Section 19–1403 states that the tax is imposed on the value of the real estate transferred and that the tax is payable at the time of recording or within 30 days of acceptance. Section 19–1402(14)(b) is the valuation section for foreclosure and this section contains no rule setting forth a 30 day period within which to value the property" .... (emphasis in original deleted).

23. On May 22, 1997, Kennedy ... timely filed a Petition for Appeal of the denial by the Refund Unit, Department of Revenue of its claim for a refund of

transfer tax to the Philadelphia Tax Review Board .... (emphasis added).

Stipulation of Facts, October 16, 1997, Paragraphs 1–12 and 16–23 at 1–8; Reproduced Record (R.R.) at 10a–17a.

On September 18, 1998, the TRB denied Kennedy's refund claim and Kennedy appealed. The common pleas court denied the appeal and concluded:

A common sense interpretation of this section [Philadelphia Code Chapter 19–1402(14)(b) ] would lead one to the conclusion that deeds in lieu are intended to be included. There is no rationale why they should be in a different category than mortgage foreclosures. In any event, Section (b) includes "transactions without consideration or for consideration less than the actual monetary worth of the real estate". This Court concludes that deeds in lieu, even if not specifically mentioned, were intended to be included within this Section.

The second argument raised by the Appellant [Kennedy] is that the 1996 assessment should be used in determining the value of the property. The TRB determined the assessment value in effect for the 1995 year was correctly used in calculating the realty transfer tax. This Court concurs. The 1995 assessment was in effect at the time of the transfer and was not even on appeal. The ordinance contemplates applying the assessment for the year of the transfer, which was the 1995 year. The Stipulation to reduce the assessment was intended to apply to the year 1996. If the Appellant [Kennedy] wanted the reduction to apply to 1995 as well, it should have petitioned for the finding to apply "nunc pro tunc".

Opinion of the Common Pleas Court, June 21, 1999, at 2–3.

■ On appeal[1] Kennedy contends that the City and Kennedy stipulated that the fair market value of the Carlton House was $18,000,000 as of November 30, 1995, the date of the transfer of the property. Kennedy asserts that because the value of the property was established at the time of the transfer Section 19–1402(b) of the Philadelphia Code (Code) is inapplicable. We agree.

Section 19–1403 of the Code (Imposition of Tax) provides:

(a) Every person who transfers ownership of real estate situate within the City or who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, or who accepts ownership of real estate situate within the City, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a tax based on the value of the real estate represented by such document.... For documents made, executed, delivered or accepted or presented for recording during each of the following fiscal years, the amount of tax shall be computed by multiplying the value of the real estate represented by such document by the following rates of tax:

....

(g) three percent (3.0%) for the fiscal years of the City commencing July 1, 1994 and thereafter.

Section 19–1402 of the Code provides:

(14) *Value*

(a) In the case of any bona fide sale of real estate at arm's length for **actual monetary worth**, the amount of the actual consideration therefor, paid or to be paid, including liens or other encum-

---

1. Our review in a tax appeal case where the common pleas court takes no additional evidence is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether the Board's findings were supported by substantial evidence. *Department of Revenue v. Tax Review Board*, 157 Pa.Cmwlth. 43, 628 A.2d 1220 (1993).

brances thereon existing before the transfer and not removed thereby, whether or not the underlying indebtedness is assumed, and ground rents, or a commensurate part thereof where such liens or other encumbrances and ground rents also encumber or are charged against the real estate: Provided, that where such documents to be recorded shall set forth a nominal consideration, the "value" thereof shall be determined from the price set forth in or actual consideration for the contract of sale; (emphasis added).

(b) In the case of a gift of real estate where the transfer is not arms length, sale by execution upon a judgment or upon the foreclosure of a mortgage by a judicial officer, transactions without consideration or for consideration less than the **actual monetary worth**, a lease subject to tax pursuant to § 19–1402(12)(b), an occupancy agreement, a leasehold or possessory interest, any exchange of properties, a transfer by merger, consolidation, or acquisition, a transfer effectuated pursuant to a plan of liquidation and dissolution, or the real estate of an acquired real estate company or family farm corporation, the **actual monetary worth** of the real estate, as determined by adjusting the assessed value of the real estate, as determined by the Board of Revision of Taxes for City real estate tax purposes, for the common level ratio factor for the City as established by the State Tax Equalization Board: Provided, that the value of real estate transferred pursuant to a plan of liquidation and dissolution of a corporation or an association shall not include the proportionate value of the real estate which is attributable to securities or shares owned by persons who filed a Certificate of Transfer and paid

Realty Transfer Tax upon the acquisition of the securities and shares; (emphasis added).

(c) In the case of an easement or other interest in real estate the value of which is not determinable under clause (a) or (b), the **actual monetary worth** of such interest . . . . (emphasis added).

■ The critical issue for determination of the transfer tax under any of the subsections of Section 19–1402(14) is the "actual monetary worth" of the real estate on the date of the transfer. Here, Kennedy and the City of Philadelphia have clearly and unambiguously stipulated in Paragraph 16 of the Stipulation of Facts that the fair market value of the Carlton House did not exceed $18,000,000 on November 30, 1995, the date of the transfer from Insignia to Kennedy.[2] "The stipulation of facts is binding on both the parties and on this court, and facts effectively stipulated are controlling and conclusive." *Tyson v. Commonwealth*, 684 A.2d 246, 251 n. 11 (Pa.Cmwlth.1996), *citing Beasley Industries, Inc. v. Commonwealth*, 116 Pa. Cmwlth. 505, 542 A.2d 210 (1988). "Where the stipulation [is] clear and unambiguous on its face, we are prohibited from examining evidence, as to the intent of the parties, which is not within the four corners of the stipulation." *Cobbs v. Allied Chemical Corp.*, 443 Pa.Super. 386, 661 A.2d 1375, 1378 n. 5 (1995).

Once the actual monetary worth of the real estate is established, we must then determine which subsection of Section 19–1402(14) of the Code is controlling.

### Section 19–1402(14)(a)

Again, we refer to the stipulation for guidance. In 1989, TM Carlton House Partners, Ltd. consented to proceed under Chapter 11 and a plan of reorganization

---

**2.** We note that the common pleas court determined that the assessed value of the Carlton House was $18,000,000 as of January 1, 1996, pursuant to the stipulation and therefore this amount cannot be used for determining the value of the property in 1995. We disagree.

The "actual monetary worth" of the property at the time of the transfer (1995) is the amount that must be used for calculating the transfer tax. It is irrelevant that the assessment value of the property for the 1996 tax year is the same amount.

was approved by the Bankruptcy Court for the Eastern District of Pennsylvania that included the restructuring of the Carlton House's primary debt to Consolidated Capital Equity Partners (CCEP). Paragraph 3 of the Stipulation at 1; R.R. at 10a. Consolidated Capital Institutional Properties (CCIP), a public partnership, funded the new mortgage to CCEP. Paragraph 3 of the Stipulation at 2; R.R. at 11a. Kennedy is owned by CCIP. Paragraph 4 of the Stipulation at 2; R.R. at 11a. In December of 1994, Insignia Financial Group, Inc. (Insignia) acquired a partnership interest in CCIP that included the control of CCEP and the New Carlton House Partners, Ltd. so that Insignia could acquire a fee simple interest in the Carlton House. Paragraph 4 of the Stipulation at 2; R.R. at 11a. Finally, Insignia transferred the right to acquire the fee simple interest in the Carlton House to Kennedy and on November 30, 1995, Kennedy acquired the Carlton House from New Carlton House Partners Ltd. As noted by the stipulation, the transaction between Insignia, New Carlton House Partners Ltd. and Kennedy was not a bona fide sale of real estate at arm's length and therefore Section 19–1402(14)(a) is not applicable.

### Section 19–1402(14)(b)

Kennedy next contends that Section 19–1402(14)(b) is not applicable because the

3. Section 19–1402(14)(b) of the Code provides for the following transfers: a gift of real estate where the transfer is not at arm's length; sale by execution upon a judgment or upon the foreclosure of a mortgage by a judicial officer; transactions without consideration or for consideration less than the actual monetary worth of the real estate; a lease subject to tax; an occupancy agreement; a leasehold or possessory interest; any exchange of properties; a transfer by merger, consolidation, or acquisition; a transfer effectuated pursuant to a plan of liquidation and dissolution; or the real estate of an acquired real estate company or family farm corporation.

4. Richard Fox (Fox), attorney for Kennedy, to the common pleas court:
    Fox: ... there are so many differences between a deed in lieu of foreclosure and a sale upon a foreclosure.

transfer of the Carlton House from New Carlton House Partners Ltd. to Kennedy was by a deed in lieu of foreclosure and that this type of transfer is not included in Section 19–1402(14)(b).[3] It is the position of the City that a deed in lieu of foreclosure is the "functional equivalent" of a sale upon the foreclosure of a mortgage by a judicial officer. We reject this argument.

■ Section 1928(b)(3) of the Statutory Construction Act, 1 Pa.C.S. § 1928(b)(3) provides that "[a]ll provisions of a statute of the classes hereafter enumerated shall be strictly construed ... provisions imposing taxes." To expand a taxing provision beyond its plain meaning "would be a flagrant violation of the General Assembly's dictate that we strictly construe taxing statutes." *See Allebach v. Department of Finance and Revenue*, 546 Pa. 146, 151, 683 A.2d 625, 629 (1996).

Section 19–1402(14)(b) clearly does not include a transfer by a deed in lieu of foreclosure and to equate it to a sale upon the foreclosure by a judicial officer requires one to go beyond the plain meaning of subsection (b). In fact initially, the common pleas court noted at the argument that a deed in lieu of foreclosure is entirely different from a sale upon foreclosure.[4] Kennedy's argument is compelling.

The Court: I know them.
Fox: So I don't think they are the functional equivalent and I don't think it should be interpreted that way.
The Court: They are certainly not the identical thing because lenders frequently, as I recall, would not take the deed because they were scared to death of what they were buying when you took the deed.
Fox: Right. A foreclosure, as you know, it is not necessarily the lender that is going to end up with the property. The deed in lieu of foreclosure, you are transferring back to the lender. Foreclosure sale, anybody can buy it. It doesn't mean that the lender is going to get the property. There's so many differences. I would be happy to-
The Court: You don't have to. They are clearly not identical. There's enormous differences.

### Section 19–1402(14)(c)

Kennedy contends that the catchall provision of Section 19–1402(14)(c) of the Code is applicable. We agree.

Section 19–1402(14)(c) applies to the present facts because the value of the Carlton House on the date of the transfer was $18,000,000. The transfer was not a bone fide sale and the value of the real estate was readily ascertainable.

Accordingly, we reverse the decision of the common pleas court and remand for a calculation of the amount of transfer tax based upon the actual monetary value of $18,000,000.

### *O R D E R*

AND NOW, this 9th day of May, 2000, the order of the Court of Common Pleas of Philadelphia in the above-captioned case is reversed and the present matter remanded for a calculation of the amount of transfer tax due.

Jurisdiction relinquished.

Notes of Testimony, January 20, 1999, at 29–30; R.R. at 67a–68a.