Matter of Kosmo Family Trust (Savino) (2022 NY Slip Op 04603)

Matter of Kosmo Family Trust (Savino)

2022 NY Slip Op 04603

Decided on July 14, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 14, 2022

533795
[*1]In the Matter of the Kosmo Family Trust. Laura E. Knipe Wieland et al., Respondents; Donna Savino, Appellant.

Calendar Date:May 25, 2022

Before:Egan Jr., J.P., Clark, Aarons, Fisher and McShan, JJ.

Tabner, Ryan & Keniry, LLP, Albany (William F. Ryan Jr. of counsel), for appellant.
Whiteman Osterman & Hanna LLP, Albany (William S. Nolan of counsel), for respondents.

McShan, J.
Appeal from an order of the Surrogate's Court of Albany County (Pettit, S.), entered July 27, 2021, which, in a proceeding pursuant to EPTL article 7, partially denied respondent's motion for summary judgment dismissing the petition.
In July 1994, Janet D. Kosmo (hereinafter decedent) and her husband, Joseph Kosmo, created the Kosmo Family Trust (hereinafter the trust), designating themselves as its settlors and trustees. The trust originally contained a provision directing that the trust estate be split in half following the death of both settlors, and that decedent's one-half share would be distributed to her family in general bequests, with the residue of the trust estate to petitioner Laura E. Knipe Wieland.[FN1] Joseph Kosmo died in January 2013 and, pursuant to the terms of the trust, decedent became the sole beneficiary of the trust estate.
Decedent subsequently executed three amendments to the trust, in July 2013 (hereinafter the first amendment), March 2015 (hereinafter the second amendment) and July 2016 (hereinafter the third amendment).[FN2] The first amendment provided that the residue of the trust estate would be left in equal shares to petitioners Brent Knipe and Steven X. Knipe (hereinafter the grandchildren) after a $25,000 gift to Jens and Sybille Gramer, decedent's friends, and a $25,000 gift to respondent. The second amendment removed the bequests to the grandchildren, retained the gift to the Gramers and left the remainder of the trust estate to respondent. The third amendment removed the gift to the Gramers and left the entirety of the trust estate residue to respondent.
Decedent died in December 2017 and was survived by her two children, Wieland and petitioner Richard X. Knipe, and the grandchildren. In December 2018, petitioners commenced the instant proceeding seeking to void the first, second and third amendments upon allegations that decedent lacked capacity at the time of execution and was subject to the undue influence and misrepresentations of respondent.[FN3] In the alternative, the petition sought to impose a constructive trust on the remainder of the trust as a result of respondent's purported fraud on decedent.
Respondent thereafter moved for summary judgment dismissing the petition in its entirety, claiming that the allegations regarding decedent's lack of capacity and respondent's undue influence and fraud were wholly speculative and conclusory.[FN4] Surrogate's Court, among other things, denied that part of the motion seeking to dismiss the claims of undue influence and fraud pertaining to the second and third amendments (hereinafter the trust amendments), finding that there were material questions of fact concerning the execution of the trust amendments.[FN5] Respondent appeals, and we affirm.
Initially, we note that the trust contains a choice of law provision designating California law as governing. In light of that provision, which was incorporated into the trust and ratified in all subsequent amendments, [*2]the substantive law of California is applicable to "[a]ll questions concerning the validity, interpretation, and administration of [the trust]" (see Tanges v Heidelberg N. Am., 93 NY2d 48, 53 [1999]; see Matter of Frankel v Citicorp Ins. Servs., Inc., 80 AD3d 280, 285 [2010]). However, as the forum hosting the litigation, the procedural rules of this state must apply, including those setting forth respondent's burden on a motion for summary judgment (see Davis v Scottish Re Group Ltd., 30 NY3d 247, 252 [2017]; Nestor v Putney Twombly Hall & Hirson, LLP, 153 AD3d 840, 842 [2017], lv denied 30 NY3d 907 [2017]; Ground to Air Catering v Dobbs Intl. Servs., 285 AD2d 931, 932 [2001]).
We turn first to petitioners' claims of undue influence, which California common law describes "as 'pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency'" (Lintz v Lintz, 222 Cal App 4th 1346, 1354 [2014], quoting Rice v Clark, 28 Cal 4th 89, 96, 47 P3d 300, 304 [2002]). The common-law definition is supplemented by statute, which holds that undue influence means "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity" (Cal Welf & Inst Code § 15610.70 [a]; see Cal Prob Code § 86). "Influence which reaches the stage of being undue influence is not at all the same in every case. In one case it takes but little to unduly influence a person; in another case much more. Accordingly, every case must be viewed in its own particular setting" (Estate of Sarabia, 221 Cal App 3d 599, 607 [1990] [internal quotation marks, brackets, ellipsis and citations omitted]).
"Normally, the party contesting a testamentary disposition bears the burden of proving undue influence" (Conservatorship of Davidson, 113 Cal App 4th 1035, 1059 [2003] [citation omitted], overruled in part on other grounds Bernard v Foley, 39 Cal 4th 794, 816 n 14, 139 P3d 1196, 1209 n 14 [2006]; see Rice v Clark, 28 Cal 4th at 97, 47 P3d at 304). In certain narrow circumstances, a challenger to a trust instrument may invoke "a presumption of undue influence" by demonstrating that "(1) [the respondent] . . . had a confidential relationship with the [decedent]; (2) [the respondent] actively participated in procuring the instrument's preparation or execution; and (3) [the respondent] would benefit unduly by the testamentary instrument" (Rice v Clark, 28 Cal 4th at 96-97, 47 P3d at 304; see Estate of Garibaldi, 57 Cal 2d 108, 113, 367 P2d 39, 42 [1961]; Keading v Keading, 60 Cal App 5th 1115, 1127 [2021]; Estate of Sarabia, 221 Cal App 3d at 605). Otherwise, a party may establish undue influence by submitting either direct or circumstantial proof establishing, among other things, that "(1) [t]he provisions of the [trust] were unnatural[;][FN6] (2) the dispositions of the [trust] were at variance with the intentions [*3]of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his [or her] freedom of will;" and (5) whether "the person charged with undue influence was in fact active in procuring the execution of the instrument in question" (Estate of Ventura, 217 Cal App 2d 50, 59-60 [1963] [internal quotation marks, ellipsis and citations omitted]; see Estate of Franco, 50 Cal App 3d 374, 382-383 [1975]).
We find that there are issues of fact that preclude summary judgment dismissing petitioners' undue influence claim (see Hagen v Hickenbottom, 41 Cal App 4th 168, 188 [1995]). With respect to the presumption of undue influence, respondent's own testimony reflects that she established a close friendship with decedent after the death of decedent's daughter Claudia Knipe. Further, decedent's estate attorney characterized respondent as decedent's "trusted friend," and the trust amendments expressly describe respondent as decedent's "good" and "trusted friend," which support the inference of a confidential relationship (see Hudson v Foster, 68 Cal App 5th 640, 662-663 [2021]; O'Neil v Spillane, 45 Cal App 3d 147, 151-153 [1975]; Estate of Evans, 274 Cal App 2d 203, 211 [1969]; Pryor v Bistline, 215 Cal App 2d 437, 446-447 [1963]; Faulkner v Beatty, 161 Cal App 2d 547, 550-551, 327 P2d 41, 42-43 [1958]; compare Kudokas v Balkus, 26 Cal App 3d 744, 750 [1972]).
As to her alleged active role in amending the trust, respondent testified that she accompanied decedent to her estate attorney's office so that decedent could discuss the second amendment. Although respondent suggests that she was not present while decedent signed the amendment, her testimony is inconsistent on this point, as she also testified that the date the second amendment was signed was the same date that she had accompanied decedent to the attorney's office. Considered alongside the various affidavits and testimony concerning respondent's alleged representations to decedent about caring for her possessions after her death and respondent's potential knowledge of decedent's estate planning, issues of fact remain as to whether she actively participated in procuring the trust amendments (see Estate of Baker, 131 Cal App 3d 471, 481-482 [1982]; see also Lintz v Lintz, 222 Cal App 4th at 1355, 1357-1358; compare Estate of Mann, 184 Cal App 3d 593, 608-609 [1986]).
With respect to the undue benefit respondent might receive, the second amendment left respondent with the lion's share of the estate subject only to a $25,000 bequest to the Gramers, and the third amendment rendered her the sole beneficiary (see Estate of Williams, 99 Cal App 2d 302, 312-316, 221 P2d 714, 719-722 [1950]). Respondent correctly notes that it is insufficient to prove undue benefit based only [*4]on respondent's status as the sole beneficiary despite not being the natural object of decedent's bounty (see Estate of Sarabia, 221 Cal App 3d at 606). However, that proposition alone is not enough to foreclose the presumption of undue influence in this case, as issues of fact remain in light of the pre-amendment trust provisions, which would have provided her nothing (see Estate of Mann, 184 Cal App 3d at 607; Estate of Baker, 131 Cal App 3d at 481; compare Estate of Darilek, 151 Cal App 2d 322, 331, 311 P2d 615, 621 [1957]), and the various evidence that reflects decedent's good relationship with the grandchildren until her death (see Estate of Garibaldi, 57 Cal 2d at 113, 367 P2d at 42; compare Estate of Lingenfelter, 38 Cal 2d 571, 584, 241 P2d 990, 998 [1952]; Estate of Wright, 219 Cal App 2d 164, 171 [1963]).
Finally, we find that there are triable issues concerning those factors that might establish undue influence without reliance on the presumption (see David v Hermann, 129 Cal App 4th 672, 684-685 [2005]), as the testimony and affirmations, viewed in the light most favorable to petitioners, suggest that decedent executed the trust amendments at a time when she was potentially vulnerable and when her relationship with certain family members was frayed (see Estate of Greuner, 31 Cal App 2d 161, 163, 87 P2d 872, 873 [1939]; compare Estate of Dobrzensky, 105 Cal App 2d 134, 138, 232 P2d 886, 888-889 [1951]). That the trust was so quickly amended three times after decedent's husband died, each time incrementally increasing respondent's share at the expense of longtime friends and the grandchildren, also counsels against granting respondent's motion — especially when considered with decedent's statements insinuating that respondent played a role in isolating decedent from her family (compare Estate of Williams, 99 Cal App 2d at 311-312, 221 P2d at 719).
As to petitioners' fraud claim, "[t]he theories of undue influence and fraud commonly rest on a similar factual basis since contestants relying on a theory of undue influence may claim that the beneficiary employed misrepresentations to pressure the testator" (David v Hermann, 129 Cal App 4th at 685). Mindful that fraud and undue influence are "distinct grounds for contest" (id.), we find that the issues of fact that we identified above precluding dismissal of petitioners' undue influence claim compel the same outcome with respect to petitioners' fraud claim.
Egan Jr., J.P., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The distribution terms for Wieland's share contained an earmark that it was decedent's desire that Wieland care for Claudia Knipe, decedent's daughter with special needs, who died in February 2006.
Footnote 2: Decedent and her husband previously amended the trust in August 2008. That amendment is not the subject of this litigation.
Footnote 3: Wieland initiated a similar proceeding against respondent in March 2018, which Surrogate's Court summarily dismissed, without prejudice, due to lack of standing (see Matter of Kosmo Family Trust [Wieland—Savino], 176 AD3d 1465 [2019]). This proceeding followed.
Footnote 4: In her motion, respondent also asserted that the proceeding was time-barred and that the grandchildren lacked standing. Surrogate's Court rejected these arguments and respondent has not contested those determinations on appeal.
Footnote 5: Surrogate's Court ultimately granted that portion of the motion seeking summary judgment dismissing claims by Wieland and Richard Knipe as they lacked standing due to the withdrawal of their objection to the validity of the first amendment. The court also granted that part of the summary judgment motion dismissing the claims regarding decedent's lack of mental capacity.

Footnote 6: "Unnatural provisions are defined as those which prefer strangers in blood to the natural objects of the testator's bounty" (Estate of Straisinger, 247 Cal App 2d 574, 586 [1967] [internal quotation marks and citations omitted]).