American Food & Vending Corp. v Amazon.com, Inc. (2023 NY Slip Op 01333)

American Food & Vending Corp. v Amazon.com, Inc.

2023 NY Slip Op 01333

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

534201
[*1]American Food & Vending Corporation, Respondent,
v
Amazon.com, Inc., Appellant.

Calendar Date:January 11, 2023

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Clarick Gueron Reisbaum LLP, New York City (Melissa C. Holsinger of counsel) and Levene Gouldin & Thompson LLC, Vestal (John L. Perticone of counsel), for appellant.
Bond Schoeneck & King, PLLC, Syracuse (J.P. Wright of counsel), for respondent.

Clark, J.P.
Appeal from an order of the Supreme Court (Jeffrey A. Tait, J.), entered September 17, 2021 in Broome County, which, among other things, denied defendant's motion for partial summary judgment.
Plaintiff and Diapers.com entered into a service agreement on January 4, 2010 (hereinafter the Agreement), whereby plaintiff agreed to install, service and maintain vending machines to provide food and beverage products at Diapers.com's warehouse in the Village of Gouldsboro, Pennsylvania. In return, Diapers.com granted plaintiff the exclusive right to provide vending, office coffee and water services in addition to selling food products, confections, snacks and nonalcoholic beverages at Diapers.com's facility. The Agreement consisted of a 10-year initial term and included a liquidated damages clause to determine plaintiff's damages in the event of a breach by Diapers.com. The Agreement also stated that, should plaintiff "invest $10,000.00 in equipment improvements" during the first term, then, "upon expiration of the [first term, the] Agreement shall thereafter automatically renew for a successive like term." Further, the Agreement provided that any potential litigation would be handled in Broome County, New York, applying Pennsylvania law.
In 2011, defendant bought Diapers.com and assumed its rights and obligations under the Agreement. It appears that, starting in 2014, disputes began to arise amongst the parties. Then, in March 2018, defendant notified plaintiff that it was terminating the Agreement effective March 1, 2018 and asked plaintiff to remove all of its equipment from defendant's facility. Plaintiff commenced the instant action in July 2018 alleging breach of contract. Further, plaintiff alleged that it had invested over $10,000 in equipment improvements, causing the Agreement to be extended for another 10 years; consequently, plaintiff argued, defendant was liable for liquidated damages through January 2030 — the expiration of the Agreement's extended term. Defendant answered and filed counterclaims alleging that plaintiff had breached the contract and seeking a declaration that the liquidated damages amounted to an unenforceable penalty.
Thereafter, defendant moved, prediscovery, for partial summary judgment, seeking a finding that, should plaintiff succeed in its breach of contract claim, the liquidated damages clause was limited from the breach until January 10, 2020 — the expiration of the initial term of the Agreement. Plaintiff cross-moved for partial summary judgment, seeking a finding that, because plaintiff had invested $10,000, the Agreement had been extended for another 10 years, and the liquidated damages clause should be applied from the breach until January 10, 2030 — the expiration of the renewed term of the Agreement. Supreme Court denied defendant's motion and partially granted plaintiff's cross-motion, finding that, according to the Agreement, plaintiff's investment of $10,000 in equipment improvements at defendant's warehouse [*2]would lead to the automatic renewal of the Agreement for another 10 years and, as a result, the liquidated damages clause would apply until January 10, 2030.[FN1] Defendant appeals.
Initially, because the Agreement contains a choice of law provision, Pennsylvania substantive law governs. "However, as the forum hosting the litigation, the procedural rules of this state must apply, including those setting forth [the] burden on a motion for summary judgment" (Matter of Kosmo Family Trust [Wieland-Savino], 207 AD3d 934, 936 [3d Dept 2022] [citations omitted]; see Davis v Scottish Re Group Ltd., 30 NY3d 247, 252 [2017]). "When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations" (Carpenter v Nigro Cos., Inc., 203 AD3d 1419, 1420-1421 [3d Dept 2022] [internal quotation marks and citations omitted]). Furthermore, summary judgment can only be granted when "the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action" (WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 827 [3d Dept 2021] [internal quotation marks and citations omitted]; see Calcagno v Graziano, 200 AD3d 1248, 1254 [3d Dept 2021]).
Under Pennsylvania law, "contract interpretation is a question of law, [and] this Court is not bound by the trial court's interpretation" (Miller v Poole, 45 A3d 1143, 1145 [Pa Super Ct 2012] [internal quotation marks and citation omitted]; see Starling v Lake Meade Prop. Owners Assn., Inc., 640 Pa 126, 157, 162 A3d 327, 346 [2017]). "In a written contract[,] the intent of the parties is the writing itself[,] and when the words are clear and unambiguous[,] the intent is to be determined only from the express language of the agreement" (Robert F. Felte, Inc. v White, 451 Pa 137, 143, 302 A2d 347, 351 [1973] [citations omitted]; see Kennedy Blvd. Assoc. I, L.P. v Tax Review Bd. of City of Phila., 751 A2d 719, 724 [Pa Commw Ct 2000]). Further, "[a] court cannot disregard a provision in a contract if a reasonable meaning can be ascertained therefrom[; rather,] . . . each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument" (John McShain, Inc. v Commonwealth of Pennsylvania Gen. State Auth., 9 Pa Commw 427, 431, 307 A2d 469, 472 [1973]; see Newman Dev. Group of Pottstown, LLC v Genuardi's Family Mkt., Inc., 98 A3d 645, 654 [Pa Super Ct 2014], appeal denied 632 Pa 677 [2015]).
The relevant inquiry on this appeal is whether the section 4 renewal clause could lead to a renewal of the Agreement prior to the expiration of the initial [*3]term such that the liquidated damages clause could apply to any period beyond January 2020. To answer this question, we consider the entirety of the Agreement but focus on three sections — section 4, which includes a renewal clause, the section 7 renewal clause, and the section 5 liquidated damages clause. Section 4 of the Agreement reads: "The initial term of this Agreement shall begin on [January 11, 2010] and continue for a period of ten (10) years (the 'Term'). During the Term, [plaintiff] may invest $10,000.00 in equipment improvements for [defendant]'s operations, in which case upon expiration of the Term this Agreement shall thereafter automatically renew for a successive like term." The Agreement's other renewal clause, included in section 7, reads: "After the initial term, either party shall have the option to renew for two successive like terms." The Agreement's liquidated damages clause, included in section 5, reads: "The parties agree that [i]n the event of a breach by [defendant], it would be impossible to adequately determine damages at law. Therefore, in the event that the Agreement is breached by [defendant] for any reason, [defendant] shall pay [plaintiff] as liquidated damages, and not as a penalty, a sum equal to the number of weeks remaining in the Agreement's term multiplied by the average weekly profits of [plaintiff]."
Starting with section 4, the Agreement defines "Term" (capitalized) as the "initial term of this Agreement" beginning on January 11, 2010 and concluding on January 10, 2020. Defendant argues that, under the Agreement, "term" (uncapitalized) can only refer to a 10-year period. However, the Agreement does not define "term" (uncapitalized), and we decline to import such a rigid definition. Rather, using its "common meaning" (Chester Water Auth. v Pennsylvania Dept. of Community & Economic Dev., ___ Pa ___, ___, 249 A3d 1106, 1112 n 13 [2021]; see 1 Pa CS § 1903 [a]; Robert F. Felte, Inc. v White, 451 Pa at 144, 302 A2d at 351), "term" means "the time for which something lasts" (Merriam-Webster.com Dictionary, term [https://www.merriam-webster.com/dictionary/term]). "In law as in life, however, the same words, placed in different contexts, sometimes mean different things" (Yates v United States, 574 US 528, 537 [2015]; accord Commonwealth of Pennsylvania v Giulian, 636 Pa 207, 217, 141 A3d 1262, 1268 [2016]). As such, to determine the duration of a "term" referenced by the Agreement, we must look to the context in which that word is used (see Suffolk Constr. Co. v Reliance Ins. Co., 656 Pa 438, 452, 221 A3d 1205, 1213 [2019]).
Adopting the common definition of "term," we turn to the two renewal clauses included in the Agreement. Under section 7, either party was given the option to renew the Agreement for up to "two successive like terms." This language permits the formation of two successive terms that are similar to the initial term created by the Agreement, and, "in the absence of any specified manner of renewal[*4], performance under the contract[ ] by either party without objection is adequate to effect renewal" (Commonwealth of Pennsylvania, Dept. of Transp. v Brozzetti, 684 A2d 658, 664 [Pa Commw Ct 1996]). Phrased another way, pursuant to section 7, either party may continue to perform its obligations under the Agreement past the expiration of the initial term; if the other party fails to object to such continued performance, the Agreement is deemed renewed.
Like section 7, the section 4 renewal clause permits for the creation of "a successive like term." However, unlike section 7, section 4 includes a condition upon which the formation of the successive term occurs. "While conditions usually deal with duties of performance, they may relate to the existence of contracts as well" (Village Beer & Beverage, Inc. v Vernon D. Cox & Co., Inc., 327 Pa Super 99, 109-110, 475 A2d 117, 122 [1984] [citation omitted]). The section 4 renewal clause states that if plaintiff invests $10,000 in equipment improvements during the initial term of the Agreement, then the agreement is "thereafter automatically renew[ed] for a successive like term." Defendant's contention that the successive term only forms "upon the expiration of the Term" would vitiate the clear meaning of the section 4 renewal clause. Rather, that phrase is reasonably interpreted as an "effective date" for the "successive like term" formed "automatically" upon plaintiff's investment of $10,000. To hold otherwise "would render the words of the contract meaningless" (Lenihan v Howe, 449 Pa Super 426, 432, 674 A2d 273, 276 [1996]; see Lardas v Underwriters Ins. Co., 426 Pa 47, 53, 231 A2d 740, 742-743 [1967]).
Turning to the section 5 liquidated damages clause, defendant's rigid definition of a "term" would also lead to an unreasonable result. Through section 5, the Agreement provides a formula through which plaintiff would receive liquidated damages upon defendant's breach for "the number of weeks remaining in the Agreement's term." Defendant contends that because "term" means a 10-year period, "the number of weeks remaining" could not be longer than a 10-year period. As noted previously, such a rigid definition of a "term" is not included within the four corners of the Agreement. Instead, the common meaning of "term" simply means the duration of the Agreement. In the context of this litigation, such duration would include any renewed term that had already formed prior to defendant's termination of the Agreement (compare Commonwealth of Pennsylvania, Dept. of Transp. v Brozzetti, 684 A2d at 666). Therefore, we find that the Agreement allows for the possibility of liquidated damages until January 2030 if plaintiff can establish that it invested $10,000 during the initial term.
We note that, because this appeal deals with a limited question, we do not weigh further into the parties' dispute. To that end, we do not determine whether plaintiff "invest[ed] $10,000.00 in equipment improvements for [defendant[*5]]'s operations" during the initial term; whether either party breached the Agreement; or whether the liquidated damages clause constitutes a penalty. Lastly, defendant's remaining contentions, to the extent not expressly addressed, have been examined and found to lack merit.
Pritzker, Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Supreme Court originally found that plaintiff had actually invested the $10,000, causing the Agreement to be renewed. However, in April 2022, following defendant's motion to reargue and renew, the court noted that, because the cross-motions were made prediscovery, it had erred in finding that plaintiff had made such investment. As a result, the court's April 2022 order reversed that portion of the order on appeal.