Matter of James M. McDonald III Trust (JP Morgan Chase Bank, N.A.)
2026 NY Slip Op 03481
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of the James M. McDonald III Trust. JP Morgan Chase Bank, N.A., as Trustee, Respondent; James M. McDonald IV, Appellant.

Decided and Entered:June 4, 2026
CV-23-2200 CV-24-1941
Calendar Date: February 10, 2026
Before: Clark, J.P. Aarons, Pritzker, Mcshan And Corcoran, JJ.

Crossmore & Tiffany, Ithaca (Edward Y. Crossmore of counsel), for appellant.
Duane Morris LLP, New York City (Charles J. Keeley of counsel), for respondent.

[*1]
Aarons, J.
Appeals (1) from an order of the Surrogate's Court of Cortland County (Julie Campbell, S.), entered October 25, 2023, which, in a proceeding pursuant to SCPA 2208, among other things, granted petitioner's motion for summary judgment dismissing the objections, and (2) from a decree of said court, entered October 8, 2023, which, among other things, judicially settled the final accounting of the trust.
Respondent is the great-grandson of James M. McDonald Sr. (hereinafter decedent). Decedent died in 1956, leaving a last will and testament that created several trusts for the benefit of his children, including a trust for his son James M. McDonald Jr. (hereinafter the grandfather). Decedent's will further provided that, upon the grandfather's death, the assets of the grandfather's trust would be divided into equal shares and held in further trust for the grandfather's children, including James M. McDonald III (hereinafter the father). Decedent's will also restricted the sale of stock held by decedent's estate or any trust created under the will, providing that such stock could not be sold without the grandfather's consent or until his death. Chase Manhattan Bank, petitioner's predecessor corporation (hereinafter collectively referred to as petitioner unless otherwise specified),FN1 and the grandfather were appointed co-trustees of the trusts created by the will.
At the time of decedent's death, a substantial portion of the estate consisted of shares of J.C. Penney Company, Inc. (hereinafter JCP) stock. The grandfather died on March 2, 1972. Thereafter, in November 1972, petitioner commenced a proceeding for a judicial settlement of the trusts created by decedent's will, including the grandfather's trust. Respondent, then a minor, was represented in that proceeding by a guardian ad litem. No objections were interposed and, by decree entered in June 1973, the account for the period December 28, 1956 through July 11, 1972 was judicially settled, with directions to pay commissions to the surviving trustees from the grandfather's trust principal and retain the balance of the principal — still predominantly composed of JCP stock — in continuing trusts for the grandfather's children, including the father.
In December 1973, the trust for the father (hereinafter the subject trust) was funded with 28,640 shares of JCP stock. Shortly thereafter, petitioner began selling portions of that stock, including sales in December 1973 and January 1974, and continued to divest the subject trust of its JCP holdings in subsequent transactions over the ensuing years. By October 1983, 93% of the subject trust's original JCP position had been sold.
The father died in April 2020, and, in February 2022, petitioner commenced this proceeding seeking judicial settlement of its account for the period July 11, 1972 through January 31, 2022. Respondent thereafter filed objections, alleging, among other things, that petitioner breached its fiduciary duties by failing to diversify the [*2]concentrated JCP holdings in the subject trust within 30 days of the grandfather's death on March 2, 1972 — that is, April 1, 1972 — resulting in significant loss. Following discovery, petitioner moved for summary judgment dismissing the objections; respondent opposed and abandoned three of his four objections in the process, and then cross-moved to amend the remaining objection respecting the alleged overconcentration of JCP stock. Surrogate's Court denied respondent's cross-motion, granted petitioner's motion and, in a subsequent decree settling the subject trust's account, awarded petitioner counsel fees to be paid from respondent's share of the subject trust. Respondent appeals.
We turn first to petitioner's motion for summary judgment respecting the part of respondent's failure-to-diversify objection as originally pleaded asserting petitioner should have liquidated at least 90% of the JCP stock by April 1, 1972. Surrogate's Court correctly determined that this aspect of the objection is barred by res judicata (see CPLR 3211 [a] [5]; 3212 [b]). Under that doctrine, a party may not relitigate a claim where a prior judgment on the merits exists between the same parties involving the same subject matter, and the bar extends to claims that were or could have been raised in the prior proceeding (see Matter of Hunter, 4 NY3d 260, 269 [2005]; Matter of Falck, 232 AD3d 1150, 1153 [3d Dept 2024]). An accounting decree is therefore conclusive as to issues actually litigated as well as those that could have been raised, provided that the party had a full and fair opportunity to do so (see Matter of Hunter, 4 NY3d at 270-271).
Here, the 1973 decree judicially settled petitioner's account through July 11, 1972 — a period that includes April 1, 1972. Respondent, who was represented by a guardian ad litem in that prior accounting, does not dispute that an objection to maintaining the concentrated JCP holdings on April 1, 1972 could have been raised at that time. Instead, respondent relies upon a provision in the 1973 decree stating that petitioner was discharged from liability "except with respect to the balance of principal retained by it in the continuing trust[ ] for the benefit of" the father — i.e., the subject trust. The record shows that the father's portion of the grandfather's trust principal was not distributed to the subject trust until December 1973. We therefore agree with petitioner that this part of the 1973 decree did not reserve a right to challenge petitioner's retention of JCP stock prior to July 11, 1972, but instead merely clarified that any liability shield accorded to petitioner did not extend to its duties as trustee of the subject trust (see Matter of Marine Midland Bank-N.Y., 77 Misc 2d 543, 546-547 [Sur Ct, NY County 1974]).
That said, we agree with respondent that Surrogate's Court abused its discretion in denying his cross-motion to amend his objections. "Under CPLR 3025, a party may amend a pleading at any time by leave of court[*3], before or after judgment to conform the pleading to the evidence" (Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411 [2014] [internal quotation marks, brackets and citations omitted]). "Such a motion . . . should be liberally granted unless doing so results in prejudice to the nonmoving party" (Matter of Carter v Fairchild-Carter, 187 AD3d 1360, 1365 [3d Dept 2020] [internal quotation marks and citations omitted]). "The burden of establishing prejudice is on the party opposing the amendment" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411 [citations omitted]).
Importantly for present purposes, "[t]o warrant a surcharge, [respondent] must show that the trust's losses resulted from [petitioner's] negligence or failure to exercise such prudence" as would be expected of petitioner as a corporate fiduciary (Matter of Donner, 82 NY2d 574, 585 [1993] [internal quotation marks and citation omitted]; see Matter of Janes, 90 NY2d 41, 54 [1997]). "[O]nce imprudence is determined[,] a court may designate a reasonable time [during the life of the investment] within which divestiture should have occurred" (Matter of Saxton, 274 AD2d 110, 120 [3d Dept 2000]; see Matter of Janes, 90 NY2d at 54). Although "no fixed standard exists for the time in which divestiture of an imprudently held investment must occur" (Matter of Saxton, 274 AD2d at 120; see Matter of Janes, 90 NY2d at 50, 54), it remains respondent's burden to prove, by a preponderance of the evidence, a more reasonable divest-by date than the actual date by which petitioner had diversified 90% of the JCP stock (see Matter of Kopec, 25 Misc 3d 901, 909-910 [Sur Ct, Monroe County 2009], affd on op below sub nom. Matter of Duffy [Stone], 79 AD3d 1732 [4th Dept 2010]).
Against that backdrop, petitioner did not meet its burden to show prejudice. Contrary to petitioner's view, the amendment neither changes nor expands the underlying theory of liability, which is that petitioner failed to exercise prudence by maintaining the overconcentration of JCP stock and failing to diversify it in a timely fashion (see Matter of Saxton, 274 AD2d at 117). Despite pleading a divest-by date of April 1, 1972, the original objection sought to establish petitioner's liability based upon its management of the subject trust's JCP position through 2000; the amendment, by contrast, focuses on the period between 1973 and 1982 (compare EPTL 11-2.2 [a] [1], with EPTL 11-2.3 [b]). The amendment further specifies that petitioner should have liquidated at least 90% of the JCP stock by "such . . . time as [Surrogate's Court] may determine on the proof adduced in this case." That part of the amendment simply states what Surrogate's Court would have been required to do if respondent established petitioner's maintenance of the concentration of JCP stock was imprudent: determine, based upon a preponderance of the evidence, a reasonable time by which petitioner should have liquidated 90% of the subject trust's JCP position (see Matter of Janes, 90 NY2d [*4]at 50, 54; Matter of Saxton, 274 AD2d at 120).FN2
Petitioner therefore cannot claim that it "has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position" that its management of the concentrated JCP position was not imprudent under the applicable standard (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]). On its motion for summary judgment dismissing the objection, petitioner's burden was to demonstrate, as a matter of law, that the losses incurred by maintaining a concentration of JCP stock did not result from negligence or imprudence (see generally Matter of Hahn, 93 AD2d 583, 586 [4th Dept 1983], affd 62 NY2d 821 [1984]). If petitioner could foreclose all triable issues of material fact in that respect, the objection would fail regardless of any divest-by date, and if it could not do so, its motion would fail without reaching that issue. Petitioner's claim of prejudice from having to defend against liability arising on an "unspecified date" within a 10-year span also lacks merit, as the record shows that respondent's amendment was in response to one of his experts opining that petitioner should have diversified the overconcentration of JCP stock by March 1975 at the latest (see CPLR 3015 [c]).FN3
Petitioner's further claim of prejudice arising from the "years" respondent waited to amend the objection is unconvincing, as petitioner waited until the close of discovery to seek dismissal of the original objection as precluded by the 1973 decree — a step that might have prompted an earlier amendment of the objection (see CPLR 3211 [a] [5]; cf. Matter of Falck, 232 AD3d at 1153). To the extent petitioner asserts that respondent's delay in seeking the amendment was inordinate, violated the court's scheduling orders and may require additional discovery, those issues may be addressed through the discretionary imposition of costs or other just terms (see CPLR 3025 [c]).
So amended, we address the objection in connection with Surrogate's Court's alternative determination granting petitioner's motion for summary judgment dismissing the amended objection on the merits. "Summary judgment is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action" (McFadden v State of New York, 138 AD3d 1167, 1167 [3d Dept 2016] [internal quotation marks and citations omitted], appeal dismissed 28 NY3d 947 [2016]; see Cole v Triple M Excavating & Trucking LLC, 237 AD3d 1304, 1304-1305 [3d Dept 2025]). "When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making [*5]any credibility determinations" (American Food & Vending Corp. v Amazon.com, Inc., 214 AD3d 1153, 1154-1155 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of McNeil, 233 AD3d 1231, 1233 [3d Dept 2024]).
Respondent first challenges the admissibility of the so-called investment diary, which is a handwritten, dated list documenting the quantities and prices of securities bought and sold in the subject trust's portfolio during the relevant time frame of 1973 to 1982. Contrary to respondent's view, petitioner established the investment diary's admissibility under the business records exception to the hearsay rule through the affidavit of Sue Simpson, an executive director at petitioner who served as the trust officer for the subject trust from 2000 to 2008, first at Chase Manhattan Bank and then, following the merger, at petitioner (see CPLR 4518 [a]). Simpson affirmed that petitioner incorporated the diary into its business records following its merger with Chase Manhattan Bank and that the diary has been routinely relied upon in the ordinary course of petitioner's business as successor trustee in the administration of the subject trust (see Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737, 739 [3d Dept 2015]; Merrill Lynch Bus. Fin. Servs. Inc. v Trataros Constr., Inc., 30 AD3d 336, 337 [1st Dept 2006], lv denied 7 NY3d 715 [2006]). The diary also contains a notation evidently dated December 17, 1973 indicating that the father "advised that he would like to diversify his [JCP] holdings over a period of time." We agree with petitioner that the notation is admissible, not for its content, but for the nonhearsay purpose of proving that a conversation between petitioner and the father occurred (see People v Patterson, 28 NY3d 544, 551 [2016]; People v Ricco, 56 NY2d 320, 328 [1982]).
Mindful that, "[g]enerally, whether a fiduciary has acted prudently is a factual determination to be made by the trial court" (Matter of Janes, 90 NY2d at 50), summary judgment dismissing the amended objection is not warranted. During the 10-year period between 1973 and 1982 at issue here, this state followed the " 'prudent person' rule of investment" (Matter of Rowe, 274 AD2d 87, 90 [3d Dept 2000], lv denied 96 NY2d 707 [2001]).FN4 Under that rule, "[a] fiduciary holding funds for investment may invest the same in such securities as would be acquired by prudent [persons] of discretion and intelligence in such matters who are seeking a reasonable income and preservation of their capital" (EPTL 11-2.2 [a] [1]). Notably, "the very nature of the prudent person standard dictates against any absolute rule that a fiduciary's failure to diversify, in and of itself, constitutes imprudence, as well as against a rule invariably immunizing a fiduciary from its failure to diversify in the absence of some selective list of elements of hazard" (Matter of Janes, 90 NY2d at 50; see Matter of Hyde, 44 AD3d 1195, 1197 [3d Dept 2007], lv denied 9 NY3d 1027 [2008[*6]]).
With the foregoing principles in mind, petitioner's proof falls short of its summary judgment burden in at least two overlapping respects. First, the prudent person standard requires "a balanced and perceptive analysis of [the fiduciary's] consideration and action in the light of the history of each individual investment, viewed at the time of its action or its omission to act" (Matter of Bank of N.Y., 35 NY2d 512, 519 [1974]). Further, a corporate fiduciary must exercise the due care and skill it holds itself out as possessing, which includes, among other things, undertaking a formal analysis, establishing a sound investment plan and conducting more than routine reviews (see Matter of Janes, 90 NY2d at 54). Petitioner's proof does not establish that it did so.
Petitioner submitted two letters sent to the father in 1972 — one in May, indicating that petitioner was "considering a program whereby the investment in [JCP] would be diversified on a gradual basis," and a second in August, inquiring about his income needs and those of his children and representing that petitioner would review the matter of trust income distributions on an annual basis. The investment diary contains a bare notation stating "Initial Review" dated December 17, 1973, but the record does not disclose what that review entailed. The only "review" noted in the investment diary is another bare notation dated November 26, 1982 that reads "Reviewed for losses," which also lacks any detail. Beyond these items and the single investment diary notation regarding a conversation with the father, petitioner submitted no other evidence of further communication with the father or periodic review of the trust's investment strategy over the ensuing decade (see Matter of HSBC Bank USA, N.A. [Knox], 98 AD3d 300, 318 [4th Dept 2012], lv dismissed 20 NY3d 1056 [2013]). Our assessment of petitioner's proof is unaffected by the opinion of Charles Porten, one of petitioner's experts, who stated on reply that industry practice does not require detailed records of investment decisions and diversification strategies, and that he would not expect to see such records. Even if true, that does not relieve petitioner of its initial summary judgment burden to establish through admissible evidence that it did not violate the prudent person rule as a matter of law (see Cole v Triple M Excavating & Trucking LLC, 237 AD3d at 1304-1305; McFadden v State of New York, 138 AD3d at 1167).
Second, although the reports by petitioner's experts tended to show that gradual diversification was industry standard and plausibly justifiable, "[n]o precise formula exists for determining whether the prudent person standard has been violated in a particular situation; rather, the determination depends on an examination of the facts and circumstances of each case" (Matter of Janes, 90 NY2d at 50). In this regard, Porten — a consultant and former registered investment advisor and executive at large financial institutions — [*7]opined that the gradual diversification process was consistent with market information from Value Line, a third-party market research firm. Porten reported that Value Line assigned JCP its "highest" safety rating through the first quarter of 1973, then downgraded to "above average" through the first quarter of 1981, and then to "average" for the remainder of the relevant period. Despite a sustained decline in the safety rating of JCP stock and, as of 1975, JCP's share price, Porten observed that Value Line continued to publish positive commentary about JCP. The problem is that the Value Line comments Porten credited described JCP as having "appeal for conservative accounts willing to take the long view" in 1974 and as a "good choice for a patient investor" in 1977. Petitioner's proof, however, does not clearly show that the subject trust or the father fit those descriptions. We therefore cannot say it was prudent as a matter of law to maintain a concentration of JCP stock in the subject trust, or to base a decade-long diversification plan, on the optimism of third parties in the face of other declining indicators (compare Matter of JP Morgan Chase Bank, N.A., 133 AD3d 1292, 1298 [4th Dept 2015] [findings after bench trial], lv denied 27 NY3d 901 [2016]; Matter of Hyde, 44 AD3d at 1199-1202 [same]).FN5
Furthermore, one of respondent's experts opined that "there is no documentation suggesting that the diversification plan, if it indeed existed, underwent thorough and significant periodic re-evaluations." In reply, Porten states only that reviews may be inferred from the investment diary and transaction records, where there can be found "annual and more frequent notations indicating Trust balances, sales of stock, purchases of stock, and capital gains considerations." We also note that Brad Tumey, one of petitioner's vice presidents, testified that the investment diary reflected "disciplined" sales of JCP stock of roughly the same 10% of the original JCP position each year, and that "[m]ost of [his] diversification plans that [he has] engaged in today are ten-year plans because of taxes and low-cost basis." Thus, in our view, prudent management of the concentrated JCP holdings in the subject trust is only one of at least two reasonable inferences available — the other being that petitioner deployed a standard-issue 10-year diversification plan and conducted routine transactions and cursory reviews that could render it liable under the prudent person rule of investment (see Matter of Janes, 90 NY2d at 54). At this stage, the latter inference is the one we must credit (see American Food & Vending Corp. v Amazon.com, Inc., 214 AD3d at 1154-1155).
Petitioner also submitted the expert report of Priya Prakash Royal, an experienced attorney practicing trust and estate law and holding an MBA and LLM in taxation. Royal determined that the subject trust achieved greater capital gains tax efficiency through the gradual sale of 90% of JCP stock in the subject trust [*8]between 1972 and 1983 than if petitioner had hypothetically sold 90% of the stock by April 1972 — as respondent originally alleged. Tax efficiency, however, is but one factor in the prudence inquiry, and a favorable tax outcome does not, standing alone, establish that petitioner's gradual diversification strategy was prudent as a matter of law (see Matter of Janes, 90 NY2d at 50; Matter of Bank of N.Y., 35 NY2d at 519).
Because petitioner's proof does not meet its initial burden to establish entitlement to judgment as a matter of law dismissing the amended objection, that much of petitioner's motion must be denied "regardless of the sufficiency of the opposing papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Finally, in light of our decision, the award of counsel fees to petitioner is premature; we take no position as to whether the $645,741.01 that Surrogate's Court awarded to petitioner from respondent's share of the subject trust was reasonable or adequately supported by petitioner's papers. Respondent's remaining contentions are academic.
Clark, J.P., Pritzker, McShan and Corcoran, JJ., concur.
ORDERED that (1) the order is modified, on the law, without costs, by reversing so much thereof as granted petitioner's motion for summary judgment dismissing the objection to the accounting based upon petitioner's breach of the prudent person rule on the merits and denied respondent's cross-motion to amend the objections; motion denied to that extent, objection reinstated and cross-motion granted; and (2) the decree is reversed, on the law, without costs; and matters remitted to the Surrogate's Court of Cortland County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
Decedent's will provided that, in the event that Chase Manhattan Bank merged or became a part of another corporation, the new corporation would be substituted as co-trustee of the trusts created under the will.

Footnote 2
Although a motion to conform the pleadings to the proof under CPLR 3015 (c) is usually understood as a trial device, its application is governed by the same considerations as a motion under CPLR 3025 (b), with leave freely granted absent prejudice (seeMurray v City of New York, 43 NY2d 400, 405 [1977]; Lakshmi Grocery & Gas, Inc. v GRJH, Inc., 138 AD3d 1290, 1291 [3d Dept 2016]). Further, a motion for summary judgment "is the procedural equivalent of a trial," and CPLR 3025 (c) may be invoked in that context (Werner v Katal Country Club, 234 AD2d 659, 661 [3d Dept 1996]).

Footnote 3
In our view, the lack of a divest-by date in an objection is not fatal to the pleading, as the reasonable time for divestment — that is, the date of the breach of the prudent person rule — may not be discernable without discovery and the development of a record (see generally SCPA 302 [2]; Matter of Saxton, 274 AD2d at 117-119).

Footnote 4
Because respondent's amended objection concerns petitioner's management of assets in the subject trust between 1973 and 1982 — in particular, the 90% of the subject trust's original JCP position that petitioner liquidated in that time frame — we do not consider whether petitioner's gradual diversification of JCP stock runs afoul of the more exacting prudent investor standard that came into effect on January 1, 1995 (see EPTL 11-2.3 [a], [b]; see generallyMatter of Hyde, 44 AD3d 1195, 1197 [3d Dept 2007], lv denied 9 NY3d 1027 [2008]).

Footnote 5
We also note that one of respondent's experts highlighted the March 1975 Value Line report, which stated, "We would avoid this stock for the present."